William Eugene EATON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-13812.

Court of Criminal Appeals of Oklahoma.

Sept. 28, 1966.

James B. Martin, McAlester, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Bill Pipkin, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

William Eugene Eaton and Sammy Darrell Carico, both inmates of the State Penitentiary at McAlester, were charged jointly in Pittsburg County with the crime of assault and battery, with intent to kill, after former convictions of felonies. The assault was made on another inmate of the penitentiary on April 1, 1965.

A severance was granted and this defendant stood trial first. At the conclusion of the trial, the jury found him guilty, and fixed his punishment at imprisonment in the state penitentiary for a term of not less than three years, nor more than ten years.

Defendant's motion for new trial was overruled. In the petition in error filed in this Court, which is identical to the motion for new trial, defendant charged:

"First: That the court mis-directed the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial.

"Second: That the verdict of the jury is contrary to the law and evidence."

In his brief, counsel for defendant sets out and argues four errors of the trial court.

Defendant's first contention of error is that the court erred in its failure to furnish this defendant with a copy of the complaint filed. This necessitates a statement of the facts.

Complaint was filed against this defendant and his co-defendant, Sammy Darrell Carico, in the justice court on April 5, 1965, and the county attorney directed that a warrant issue. On April 6, 1965 the defendants were brought into the court of the justice of the peace, for their arraignment. Both defendants were represented by Attorney James B. Martin at their arraignment. The attorney was furnished one copy of the complaint on that date, which charged both defendants jointly with commission of the crime. The record of proceedings of the justice of the peace, filed in the district

court, recites that the defendants at that time "entered their separate pleas of not guilty." Preliminary hearing was set, and bonds fixed.

On April 23, 1965 the matter came on for preliminary hearing. The defendants were present and were again represented by the same attorney, who objected to proceeding with the hearing because only one copy of the complaint had been furnished him. This objection was overruled. At the preliminary hearing the defendants were bound over to stand trial in the district court.

On May 5, 1965 information was filed in the district court of Pittsburg County against the defendants, jointly charging them with assault and battery with knives, The information described the knives: "said knives being deadly weapons"; and concluded by asserting the assault was committed with intent to kill.

On May 25 counsel filed a "Plea in abatement; motion to quash or motion to set aside" on behalf of this defendant, Eaton.

The reason stated in defendant's motion was that at the time of arraignment in the justice of the peace court this defendant was not served with a copy of the complaint. A minute of the court shows that "all motions and arraignments set over until May 27."

On application of the defendant, a hearing was held in the district court on defendant's motion, and testimony was introduced. The justice of the peace admitted that only one copy of the "complaint by information" was delivered to the attorney for both of the defendants. The district court then ordered a copy of the complaint by information to be made and delivered to the attorney for this defendant, which was done.

Counsel for defendant then filed a demurrer to the information which was overruled. Counsel for defendant then announced: "Judge, William Eugene Eaton having acknowledged a copy and waiving the reading of those two informations, waiving time in which to plead, enters at this time his plea of not guilty."

The assault, for which this defendant was tried, occurred in the dining hall of the state penitentiary at McAlester, Oklahoma. The State introduced evidence to show that the person assaulted was stabbed and cut by knives. It was sufficiently shown that this defendant did lunge at the victim with a knife. The defendant had in his possession, when apprehended, a weapon which it developed was a steel serving-ladle handle, approximately 14 inches long, which had been sharpened to a fine point at one end, with the other end wrapped in electrician's tape to form a handle. The defendant first refused to drop the weapon, but finally did release it.

The prison doctor testified that he did treat, among other wounds, a wound in the small of the victim's back, which had been caused by a sharp instrument.

Several other witnesses testified that they saw the defendant with the weapon in his possession, and observed him when he made his initial lunge, but did not actually see the knife penetrate the victim.

Defendant offered the testimony of several other inmates, who in substance testified that they did not observe anything; one testified that the defendant was some distance from the place where the assault occurred; and the other man initially charged jointly with this defendant testified that this defendant did not stab the victim.

There is no doubt whatsoever that this defendant was in the place where the assault occurred; that he was seen moving toward the victim; that he had in his possession a weapon, sufficient in itself to cause a serious wound, and possibly death if successfully inserted into the victim; and that such action was accomplished by his own volition.

The evidence introduced was sufficient to place before the jury enough circumstances to create a question of fact for

the jury to determine. Notwithstanding the conflicting testimony, such conflict is to be resolved by the jury, which was done in this case.

As to the defendant's first contention of error, the Attorney General replies that the State has substantially complied with the provisions of Art. 2, § 20 of the Oklahoma Constitution. The Attorney General is correct in his contention. When the defense counsel,—for jointly charged defendants,—was provided one copy of the complaint, knowledge of the offense charged was imputed to both defendants. Defense counsel admits that knowledge of the charge was imputed to one defendant, but that such is not true for the other. We do not agree with defense counsel's latter contention. If such knowledge is imputed to one of two jointly charged defendants, then the same knowledge is imputed to the other, insofar as the same attorney represents both defendants, at the same arraignment.

> Vol. 7, Am.Jur.2d, § 107, p. 114, provides: "Notice or knowledge of an attorney, acquired during the time he is acting within the scope of his employment, is imputed to his client. The entire doctrine of imputed notice to the client rests on the ground that the attorney has knowledge of something material to the particular transaction, which it is his duty to communicate to his principal."

The Supreme Court of Kentucky recited in Barnes v. Commonwealth, 179 Ky. 725, 201 S.W. 318:

> "The general rule that notice to an attorney is notice to his client has application to knowledge of defendant's attorney in a homicide case of a separation of jurors."

Likewise, the Supreme Court of Oklahoma in Bigsby v. Eppstein, 39 Okl. 466, 135 P. 934, held in effect that an attorney is agent for his client, and his knowledge is imputed to his client.

Defendant relies on the first paragraph of the syllabus of Benton v. State, 86 Okl.Cr. 137, 190 P.2d 168, for support of his contention. That syllabus reads:

> "A denial of a constitutional right to a person prosecuted for crime is prima facie prejudicial."

While the statement of law is correct, we do not consider that this defendant has been denied his constitutional right. His counsel, while he was appearing for both parties at the arraignment, was provided sufficient information on a joint charge for him to advise both of his clients as to the nature of the charge confronting them. We therefore conclude that defendant's first cited error is without merit.

Defendant's second assignment of error is: "Error of the court overruling the demurrer to the information in district court."

His demurrer to the information was stated as follows:

> "1. That the upper or first portion thereof alleges the crime of assault and battery with a deadly weapon, Section 645, Title 21, Oklahoma Statutes Annotated; and

> "2. That the lower or last portion thereof alleges the crime of assault and battery with deadly weapon, section 652, Title 21, O.S.A.; and

> "3. That the crime listed first above carries a punishment of 5 years maximum, while the crime listed secondly carries a punishment of 20 years maximum, and therefore said information charges more than one offense."

Defendant cites as authority for his argument the case of Littlefield v. State, Okl. Cr., 354 P.2d 796.

The Littlefield case is a companion case of Davis v. State, Okl.Cr., 354 P.2d 466. In the Davis case Judge Nix states:

> "We have long adhered to the rule that when the weapon charged to have been used is not a deadly weapon per se, a sufficient description of such instrument, the manner in which it was used, and the effect produced by the use thereof should be set forth."

■ As we read the information in this case, the first portion of the information does define the crime, as provided in 21 O.S.A. § 645, but it goes still further and describes the weapons, the manner in which they were used, the effect produced by their use, and concludes with the allegation that the defendant intended to kill the person assaulted, as required by Tit. 21 O.S.A. § 652.

The case at bar can be clearly distinguished from the Davis and Littlefield cases, supra, in that the informations in neither of those cases met the requirements of section 652, whereas in the case at bar, the "intent to kill" is clearly stated, thus causing the charge to fall within Tit. 21 O.S.A. § 652. The distinguishing feature between the two sections is that § 645 provides: "with intent to do bodily harm", whereas § 652 provides, "with intent to kill".

We are of the opinion that the trial court correctly overruled the defendant's demurrer to the information, and that the information properly alleges a crime committed under Tit. 21 O.S.A. § 652.

■ For the third assignment of error, the defendant complains about the court's instruction No. 2, covering the offense of "Assault with intent to kill". He contends that the preliminary hearing was for the lesser offense of "assault with a deadly weapon", and that the court improperly instructed for the higher offense.

Defendant's contention is without merit. The trial court properly instructed the jury. The defendant was properly bound over on the charge of assault with intent to kill, and the instruction given sufficiently stated the contents of the statute with reference to the charge.

Defendant's last contention of error is that his motion for a mis-trial should have been allowed as the result of the following testimony of Park Anderson, assistant deputy warden at the penitentiary:

"Q I want to call your attention to April 1, 1965, did you have an opportunity on that morning to talk to defendant Eaton in this case? A. Yes sir.

"Q Did you advise Eaton that anything he might say could be used against him? Did he understand that? A Yes sir.

"Q Did you promise him anything or make any threats to get him to give you any statement? A No, sir.

"Q Do you remember the statement he gave you? A Yes.

"Q I would like for you to tell the jury at this time what he told you.

"Mr. Martin: I object to that question before he finishes, and ask the jury is—

"The Court: Don't answer. Alright, the jury will be excused, to go to the jury room and we will hear the testimony. Don't discuss the case among yourselves, permit anyone to discuss the case in your hearing or presence and come back at the call of the bailiff."

Out of the hearing of the jury, the court heard the testimony of the witness and refused its admissibility; whereupon the witness was excused. Defense counsel contends that the mere reference to a "statement" referred to the witness was prejudicial to the defendant.

■ 2 Wharton's Criminal Evidence (12th Edition) § 351 with reference to statements and confessions, states in part as follows:

"The practice in most jurisdictions, upon such offer of introduction and upon objection timely and properly made, is to conduct a preliminary examination of the evidence of the prosecution and the defense, in the absence of the jury, to determine the admissibility of the confession."

■ In the instant case, the trial court properly excused the jury, heard the statement, and rendered his decision as to its being inadmissible. The rule of procedure in this State has long been that where the competency of a confession is challenged as not voluntarily made, its admissibility is primarily a question for the court, and the

evidence of the surrounding circumstances should be heard in the absence of the jury. Schrack v. State, 84 Okl.Cr. 260, 181 P. 2d 270, Williams v. State, 38 Okl.Cr. 1, 258 P. 1066, and other cases.

Defendant's assignment of error is without merit. If any error occurred, it was harmless error, and not of sufficient nature to prejudice the defendant to such extent as to overcome the circumstantial evidence otherwise introduced against him.

After having carefully considered the record before the Court, and the briefs submitted, we are of the opinion that this case should be, and the same is, therefore, affirmed.

BUSSEY, P. J., and NIX, J., concur.